IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3111-FL

| | | |
|---|---|---|
| HAYDEN CALVERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LIEUTENANT GARNER, and | ) | |
| SERGEANT WILSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on the motion for summary judgment (DE # 45) and motion for a protective order (DE # 49) filed by defendants Lieutenant Gary Garner ("Garner") and Sergeant Alden Wilson ("Wilson") (collectively "defendants"). Plaintiff responded to defendants' motion for summary judgment, but did not respond to their motion for a protective order. Also before the court is plaintiff's third unopposed motion to appoint counsel (DE # 54). In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, grants defendants' motion for a protective order, and denies plaintiff's motion to appoint counsel.

**STATEMENT OF THE CASE**

On June 28, 2010, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983 against the above-named defendants as well as now-dismissed defendant Correctional Officer Dunn ("Dunn"). Plaintiff alleged that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. On February 24,

2011, defendants filed a motion to dismiss arguing plaintiff failed to allege a claim upon which relief may be granted, and the matter was fully briefed.

On September 8, 2011, the court granted in part and denied in part defendants' motion to dismiss. Defendants' motion was granted as to plaintiff's claim against Dunn, but denied as to plaintiff's claim against the remaining defendants.

On December 17, 2012, Garner and Wilson filed a motion for summary judgment arguing that plaintiff cannot establish a constitutional violation. Alternatively, Garner and Wilson assert the affirmative defense of qualified immunity. Plaintiff responded to defendants' motion and subsequently filed a motion to appoint counsel.

## STATEMENT OF FACTS

On Sunday, March 14, 2010, plaintiff injured his foot while playing soccer at Pamlico Correctional Institution ("Pamlico"). Correctional Officer Bryant was the first to respond and, in turn, notified his superior officer Sergeant Shelby. Sergeant Shelby determined that plaintiff required a wheelchair for transport.

At the medical department, Garner, a correctional officer, saw plaintiff because Pamlico does not have medical staff on Sundays. Garner Aff. ¶ 8. In accordance with North Carolina Department of Public Safety policy, Garner contacted nurse Clarice M. Moore ("Moore") at Pender Correctional Institution ("Pender") to conduct telephone triage. Id. ¶ 8. Garner informed Moore that plaintiff had injured his ankle playing soccer on the recreation yard. Id. ¶ 9. Garner also informed Moore that plaintiff's right outer ankle appeared swollen, but that Garner did not observe any discoloration or bruising. Id. ¶ 9. Moore then asked Garner if plaintiff was able to walk. Id. ¶ 10.

2

At this point the parties' version of the facts differ. Plaintiff alleges that Garner directed him to stand up and put some pressure on his injured ankle, but that plaintiff refused to comply. Plaintiff further alleges that Garner told Moore that there was nothing wrong with plaintiff's ankle and that his ankle was sprained. Garner, however, states that he asked plaintiff if plaintiff could walk and plaintiff voluntarily stood up and took a few steps. Id. Garner states that he then reported to Moore that plaintiff could walk slowly. Id.

At the conclusion of Garner's telephone conversation with Moore, Moore provided Garner the following instruction: (1) give plaintiff two acetaminophen (one packet) three times per day; (2) provide plaintiff an ice pack for twenty (20) minutes once every six hours; (3) instruct plaintiff to elevate his ankle and to not put weight on it except for trips to the bathroom and for meals; and (4) instruct plaintiff to follow up with Pamlico's nurse the following day. Id. ¶ 11; Moore Aff. ¶ 9 and Ex. B. As an added precaution, Garner relocated plaintiff from DPOD-216A, a second floor cell, to DPOD-116A, a first floor cell. Id. ¶ 14. Garner also directed that plaintiff be provided a bottom bunk assignment. Id.

On Monday March 15, 2010, Correctional Officer Platt ("Platt") visited plaintiff in his cell and, according to plaintiff, observed that plaintiff's ankle/foot was swollen, bruised, and discolored. Compl. pp. 5-6. Plaintiff requested a wheelchair in order to get to his medical appointment. Id. At approximately 6:30 a.m., Platt informed Wilson that plaintiff demanded that a tray be brought to his cell because plaintiff claimed that he could not walk to the dining hall. Wilson Aff. ¶ 8. Wilson denied plaintiff's request, and informed Platt that plaintiff had no medical authorization for a wheelchair. Id.

3

A short time later, Platt returned to Wilson's office and advised him that he told plaintiff that plaintiff would have to report to the dining hall for his meals, and that plaintiff now demanded a wheelchair. Id. Wilson then informed Platt that the authorization to use a wheelchair had to come from the medical department, and that Wilson could not authorize it. Id. Platt again returned a short time later, and informed Wilson that plaintiff claimed he could not walk. Id. ¶ 10.

At this point, the parties' versions of the facts again diverge. Wilson states that after Platt claimed plaintiff could not walk, Wilson went to plaintiff's cell and observed plaintiff sitting on his bunk with both of his feet on the floor in front of him. Id. ¶ 12. Plaintiff did not speak to Wilson. Id. Wilson then contacted Officer in Charge, Lieutenant William Stires ("Stires"), and informed Stires that plaintiff claimed that he could not walk, demanded that meals be brought to his cell, and demanded that he be provided a wheelchair. Id. ¶ 13. Wilson then asked Stires whether plaintiff had medical authorizations for meals in his cell or for the use of a wheelchair. Id. Stires responded that the medical department had not authorized delivery of meals to plaintiff in his cell or the use of a wheelchair. Id. ¶ 14. Stires informed Wilson that plaintiff had to report to the dining hall. Id. This information was relayed to plaintiff. Plaintiff, however, states that Wilson never went to his cell to observe him.

A short time later, Platt returned to Wilson's office and informed Wilson that plaintiff stated he wanted to go to the medical department. Id. ¶ 16. Wilson authorized plaintiff to go to the medical department with assistance if necessary. Id. ¶ 17.

At approximately 7:26 a.m., plaintiff arrived at the medical department assisted by other inmates. Gaskill Aff. ¶ 6. According to plaintiff, Nurse Mary Gaskill ("Gaskill") met him in the waiting area and examined his injury. Gaskill determined that plaintiff needed crutches, and

4

provided him with crutches so that he could transport himself to the medical examination area. In the course of her examination, Gaskill noted that plaintiff was tender to the touch, and that there was no bruising. Id. ¶ 9. Gaskill also noted that plaintiff was able to apply minor pressure to her hands at her direction, but that his range of motion was limited. Id. After examining plaintiff, Gaskill diagnosed him with neuroskeletal discomfort at the right ankle (or sprained ankle) as a result of a soccer injury. Id. ¶ 15. As treatment, Gaskill recommended: (1) an Ace wrap for compression and support; (2) regular ice packs for twenty-four (24) hours; (3) bed rest (except for restroom breaks); and (4) Ibuprofen with food three times per day. Id. ¶ 17. Gaskill directed that plaintiff's meals be brought to his cell. Id. Gaskill also ordered the following: (1) an extra pillow; (2) that plaintiff refrain from work for forty-eight (48) hours; (3) that plaintiff refrain from weight lifting or outdoor recreation for two weeks; and (4) that plaintiff have the use of crutches for seven days. Id. Finally, Gaskill ordered that plaintiff be scheduled for an x-ray at the next available appointment,[1] and explained to plaintiff that he should submit a sick call request if his symptoms worsened. Id. ¶¶ 17, 19.

Plaintiff had an x-ray of his ankle on March 18, 2010. On Friday March 19, 2010, plaintiff was taken to the hospital after his x-ray results reflected that his ankle was fractured in two places.

---

[1] Pamlico does not have an x-ray machine. Gaskill Aff. ¶ 19. Instead, a technician brings a portable x-ray machine to Pamlico every Thursday. Id. Gaskill states in her affidavit that she determined that plaintiff's level of discomfort and his injury were not so severe and that he could wait for the x-ray machine to make its regular stop at Pamlico on March 18, 2010. Id.

**DISCUSSION**

A.    Motion to Appoint Counsel

In his third motion to appoint counsel, plaintiff requests counsel to assist him with litigating this action. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

Plaintiff has demonstrated through the detail of his filings he is capable of proceeding *pro se*. Additionally, plaintiff's claim is not complex and is not one in which exceptional circumstances merit appointment of counsel. Therefore, plaintiff's motion to appoint counsel is DENIED.

B.    Motion for a Protective Order

Defendants request a protective order from plaintiff's discovery requests. Defendants have raised the defense of qualified immunity in this case. The defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also, Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (holding that the district court was required to rule on defendant's dispositive motion raising qualified immunity issues prior to allowing discovery). In Mitchell, the Court observed that

6

"[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 562. Because defendants raised the defense of qualified immunity and assert that plaintiff cannot establish a constitutional violation, they are entitled to a resolution of the issue prior to being subject to the burdens of litigation, including discovery. Accordingly, the court GRANTS defendants' motion for a protective order.

C.    Motion for Summary Judgment

1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.    Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the

7

law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is

whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286.

The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been
> violated on the facts alleged. Next, assuming that the violation of the
> right is established, courts must consider whether the right was clearly
> established at the time such that it would be clear to an objectively
> reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect

to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted. Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v.

Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test

to analyze first. Pearson, 555 U.S. at 242.

The court first determines whether defendants violated plaintiff's constitutional rights.

Plaintiff alleges that defendants violated his Eighth Amendment rights because they were

deliberately indifferent to his medical needs. "In order to make out a *prima facie* case that prison

conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of

a basic human need; and (2) deliberate indifference to prison conditions on the part of prison

officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501

U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the

prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently

serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials

8

Case 5:10-ct-03111-FL   Document 55   Filed 04/24/13   Page 8 of 13

act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

The court assumes, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test. Accordingly, the court focuses its inquiry on the second prong-whether defendants acted with deliberate indifference to his serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

a.    Garner

Plaintiff asserts that Garner's actions in response to plaintiff's injury resulted in a five-day delay in obtaining proper medical care for plaintiff's broken ankle. Specifically, plaintiff asserts that Garner acted with deliberate indifference when Garner told Moore that plaintiff could walk when, in fact, plaintiff refused Garner's instruction to walk. Plaintiff also states that Garner acted with deliberate indifference when Garner told Moore that plaintiff's ankle was sprained.

Here, the record reflects that Garner, a correctional officer, performed telephone triage with nurse Moore immediately following plaintiff's ankle injury. In response, Moore recommended a course of treatment which included measures to offer pain relief and instruction to follow-up with Pamlico's nurse the following day. Even taking plaintiff's allegations as true, there is no evidence

9

that Moore would have altered her course of treatment for plaintiff if she had been told that plaintiff could not put any weight on his ankle and could take no steps. Contrarily, Moore submitted an affidavit stating that, even if plaintiff's allegations were true, she still would have deferred a physical examination until the following day. Moore Aff. ¶ 11. When plaintiff was examined by Gaskill, Gaskill determined that plaintiff did not appear to be in apparent pain or distress, and recommended that plaintiff's ankle be x-rayed the following Thursday.[2] Gaskill Aff. ¶ 19.

Based upon the foregoing and the evidence in the record, there is no indication that Garner sought to interfere with plaintiff's medical treatment in any way. Rather, the record reflects that Garner took measures to make plaintiff comfortable, and that plaintiff continued to receive the recommended medical care from medical staff. Accordingly, plaintiff has failed to establish a constitutional violation because he has failed to demonstrate that Garner acted with deliberate indifference with respect to this claim.

As for plaintiff's claim that Garner acted with deliberate indifference because Garner failed to provide plaintiff with crutches or a wheelchair, the record belies plaintiff's contention. Here, the record reflects that Garner followed Moore's medical recommendations, and that Moore did not instruct Garner to obtain a wheelchair or crutches for plaintiff. To the extent Garner, a non-medical correctional officer, failed to recognize the severity of plaintiff's injury or to adequately convey plaintiff's injury to Moore, such action, particularly in light of the measures taken to provide plaintiff comfort and pain relief, constitutes mere negligence–not deliberate indifference.

---

[2] The court notes that plaintiff's medical record reflect that he quantified his pain as five out of ten (10), five days after the injury. Pl.'s Resp. Attach. p. 46. The medical records further reflect that plaintiff experience only "some" swelling five days after the injury. Id.

10

Based upon the foregoing, plaintiff has not established that Garner acted with deliberate indifference with regard to the provision for a wheelchair or crutches. Because plaintiff fails to establish an Eighth Amendment violation, Garner is entitled to qualified immunity for plaintiff's claims.

        b.    Wilson

The court next addresses plaintiff's claim that Wilson acted with deliberate indifference to plaintiff's need for crutches or a wheelchair on March 15, 2010. As a correctional officer, Wilson is unqualified to make medical diagnosis, medical recommendations, or medical decisions. The record reflects that Wilson was not involved in the medical decision making, and that he checked to determine whether there was medical authorization of a wheelchair or crutches for plaintiff. Wilson further checked with his superior officer, Spires, to determine whether plaintiff had any recent documented medical authorization for meal delivery or for a wheelchair of which Wilson was unaware. Upon learning of no such authorization, Wilson denied plaintiff's requests for a wheelchair or crutches, but authorized him to obtain assistance from other inmates to ambulate to the medical department. Plaintiff then obtained assistance from other inmates and successfully made it to the Pamlico medical unit.

Based upon the foregoing, the record reflects that at no time did Wilson interfere with plaintiff's efforts to obtain medical care. Ward v. Deboo, No. 2012 WL 2359435, at *2, n. 3 (N.D.W. Va. June, 20, 2012), aff'd, 482 F. App'x 852 (4th Cir. Oct. 16, 2012) (noting that "there is nothing to suggest that [the defendant] intentionally subjected [the plaintiff] to a substantial risk of serious harm by denying his request for a wheelchair") (internal quotations omitted); Todd v. Walters, 166 F. App'x 590, 592 (3d Cir. 2006) (holding that, even where inmate clearly exhibits

11

decreased mobility, he must still show defendants recognized deprivation of a wheelchair would cause "painful or permanent" injury). Nor has plaintiff provided any evidence that Wilson had an awareness that plaintiff had a significant medical need and disregarded that need. Rather, at most, Wilson's actions constitute negligence, which is not actionable pursuant to § 1983. Thus, plaintiff fails to establish an Eighth Amendment violation, and Wilson is entitled to qualified immunity.

        c.     Medication

Plaintiff makes the conclusory allegation that he told "medical" that his pain medication was ineffective. There is no evidence in the record that plaintiff told defendants that his pain medication was ineffective. Rather, plaintiff's interactions with the named defendants appear to have been limited to the interactions discussed above. Thus, the court finds that plaintiff has failed to establish that defendants violated his constitutional rights in connection with this claim, and are entitled to qualified immunity.

To the extent plaintiff brings this claim against another unnamed defendant, plaintiff has not provided sufficient factual support for this claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (finding that there is a minimum level of factual support required to state a constitutional claim). Additionally, there is evidence in the record reflecting that plaintiff received pain medication for his ankle injuries. Thus, the court finds that plaintiff fails to establish a constitutional violation for this claim.

12

## CONCLUSION

Based upon the foregoing, plaintiff's motion to appoint counsel (DE # 54) is DENIED.

Defendants' motion for a protective order (DE # 49) and motion for summary judgment (DE # 45)

are GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 24 day of April, 2013.

LOUISE W. FLANAGAN
United States District Judge

13